**HENDEY MACH. CO. et al. v. PRENTICE BROS. CO.**

(Circuit Court of Appeals, First Circuit. May 27, 1908.)

No. 753.

PATENTS—INFRINGEMENT—FEED MACHINE FOR SCREW-CUTTING LATHES.

The Norton patent, No. 470,591, for a feed mechanism for screw-cutting lathes, limited to the details of the arrangement of the parts, as required by the prior art, is not infringed by the machine of the Newton patent, No. 787,537, in which the second series of gear-wheels, or cone gears, are not located on the feed-shaft, as required by the claims of the Norton patent.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 155 Fed. 133.

Benjamin Phillips and William R. Wood, for appellants.
Louis W. Southgate, for appellee.

162 F.—31

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. This was a bill in equity to restrain the infringement of letters patent No. 470,591, granted March 8, 1892, to Norton for "a new and improved feed for screw-cutting engine-lathes." Claims 2, 3, 4, 5, 6, and 7 are in suit, but it is agreed on both sides that a decision concerning claim 2 will dispose of the controversy. That claim is as follows:

"2. In a device of the class described, the combination, with a series of interchangeable gear-wheels, of a shaft driven from the said series of interchangeable gear-wheels, a pinion mounted to turn with and to slide on the said shaft, a driving gear-wheel in mesh with the said pinion; a second series of gear-wheels of various diameters arranged step-like on the feed-shaft and adapted to be engaged by the said driving gear-wheel, and a lever carrying the driving gear-wheel and arranged for shifting the said pinion on the said shaft and moving the driving gear-wheel in and out of mesh with the feed-shaft gear-wheels, substantially as described."

The pitch of a screw is measured by the number of the turns of its thread in an inch of the screw's length. To cut a screw of the desired pitch, the rod from which the screw is cut must receive the proper number of revolutions while the feeding mechanism carrying the tool moves an inch in the lathe. The rod is revolved at a fixed rate, and the pitch is regulated by the ratio of this fixed revolution to the movement of the feed-shaft. As the variety of pitch required in making screws is indefinite, so the speed of the feed-shaft should be indefinitely variable.

In the old practice this variation of speed in the feed-shaft had been secured by the adjustment of a series of interchangeable gear-wheels, or by the substitution of other wheels in their place. The method is described by the patentee in his testimony about the lathe which constituted the practical art at the time his invention was made:

"Q. 46. Will you please state briefly what the gear mechanism is, or is used for, which I have marked N, O, Q, on this cut? A. It is the change gears, or three of them, for cutting threads rotating the feed-shaft or the lead screw. Q. 47. And do these, in their arrangement or mounting, provide for changes of pitch or feed? A. No; they only cut one thread as mounted. It would be necessary to remove them and substitute others, or to change their position, to cut other threads, for which provision is made by removing nuts and by an adjustable radius bar."

See also the extract from Appleton's Encyclopedia, Record vol. 2, p. 109.

For convenience, the rate of revolution in the feed-shaft should be not only variable, as stated above, but also variable readily. This object the patentee sought to accomplish by a second series of gear-wheels arranged step-like or cone-fashion upon the feed-shaft. In the patent, a lever rapidly moves the driving gear-wheel in and out of mesh with the several gear-wheels of this second series. Hence the patent provides a limited quick change of speed for ordinary needs, and a slower change for extraordinary needs, acting to multiply the quick change referred to. A substitution in the first series of gear-wheels, which was mentioned in the original specification, together with an interchange, would permit an indefinite variation of the speed

of the feed-shaft. Claim 2, however, mentions only gear-wheels which are strictly interchangeable, and the difference between substituted and interchangeable wheels is clearly recognized in the patent. The quick change by means of the second series of step-like gear-wheels was old in kindred arts, and in the lathe art is shown in letters patent No. 247,-764, issued to Hyde, No. 83,774, issued to Humphreys, and elsewhere. The slower change by means of the first series of interchangeable gear-wheels, as above stated, was old in the lathe art, and, according to the complainant, was the only method in that art to secure a change of speed which was in common use before the patentee's invention.

Returning to the claim in suit, we find that it has six elements, as follows: (1) A series of interchangeable gear-wheels. This was old in the art, as is admitted in the complainant's brief, and as is testified to by the patentee. (2) A shaft driven from said series of interchangeable gear-wheels. This, also, is admitted to be old in the art. (3) A pinion mounted to turn with, and to slide in said shaft. This, also, is old. (4) A driving gear-wheel in mesh with the said pinion. This, also, is old. (5) A second series of gear-wheels of various diameters arranged step-like, or cone-like, on the feed-shaft. As has been said, a cone-like series of gear-wheels was well known in many arts. The complainant contends, however, that it was never put into practical use in a screw-cutting engine lathe before the Norton invention. In some earlier patents it takes the place of the interchangeable gear-wheels above referred to. The complainant's witnesses differentiate these earlier conical gear-wheels from the patent in suit chiefly in respect of their inconvenient positions. (6) A lever carrying a driving gear-wheel, and arranged for moving this wheel in and out of mesh with the second series of gear-wheels. This is shown in the patent to Hyde, and is generally found in connection with a cone-shaped series of gear-wheels. The precise arrangement of the lever varies.

Turning to the specifications of the patent and its file wrapper, we find that they first stated that:

"The object of the invention is to provide a new and improved feed especially designed for use on screw-cutting engine lathes, to conveniently and rapidly change the speed of the feed screw according to the requirements of the screw to be cut.

"The invention consists of a series of gear-wheels, secured on the feed-shaft, and a driving gear-wheel arranged to be thrown in the mesh with each of the said series of gear-wheels.

"The invention further consists of a changing and locking mechanism for the driving gear-wheel."

The Patent Office struck out claims 1 to 6 as originally drawn. In this Norton acquiesced, and in redrawing the claims inserted "interchangeable gear-wheels" as an element therein. He himself amended the specifications by striking out the last two paragraphs just quoted, and inserted in their place as follows:

"The invention consists of certain parts and details and combinations of the same, as will be fully described hereinafter and then pointed out in the claim.

"Reference is to be had to the accompanying drawings forming a part of the specification, in which similar letters of reference indicate corresponding parts in both the figures."

In agreement with these statements, the original specifications were concerned almost altogether with the step-like series of gear-wheels. The first series of gear-wheels was dealt with in a single paragraph of the specifications and in a single claim, originally the seventh, which survived its passage through the Patent Office as the second claim of the patent as issued.

The gist of the Norton patent lies either (1) in the combination of the two series of gear-wheels to multiply the quick variation of speed in the feed-shaft produced by the cone-like gear-wheels as above described, or (2) in the detailed arrangement of the machinery.

1. If we hold the gist of the claims in suit to lie in the combination of the two series of gear-wheels, we must consider if there be patentable invention in the combination. Each had been used in a lathe to vary the speed of the feeding mechanism, the purpose which the patentee sought to accomplish. They had been seldom, if ever, used in combination, but the combination would seem to be obvious to a skilled mechanic. Indeed, in analyzing the Humphreys patent, the complainant's witness, Livermore, testified that it differed substantially and broadly from the Norton patent, "in that the change-feed mechanism comprising a cone and tumbler, and the change gear-driving mechanism, serving as a multiplier for the cone and tumbler system, are organized within the head stock of the lathe." These expressions and those which follow in the record (volume 1, pp. 143, 144), show that this witness, in seeking to differentiate the Humphreys patent from the patent in suit, relied almost altogether upon different details of arrangement, and not upon the lack in the Humphreys patent of the combination above referred to. It follows that the patent in suit, if valid in any respect, must be sustained as limited to details of arrangement.

2. If this be true, the defendant's arrangement is materially different from that of the patent in suit. It has no "series of interchangeable gear-wheels," as those words are used in the patent in suit, but a step-like series of gear-wheels, like the second series of the Norton patent. The conical arrangement of the defendant's first series of gear-wheels has a more rapid adjustment than has the patent in suit, and its capacity for variation is quite as great. Inasmuch as we have held the patent to be limited to details, it follows that the doctrine of equivalents properly applicable to the patent in suit does not bring the defendant's device within the scope of the patent, and we are therefore constrained to hold that the defendant does not infringe. United States Hog Hoisting Co. v. North Packing & Provision Co. (C. C. A.) 158 Fed. 818. We may add that the commercial success achieved by the Hendey lathe is not shown to be based wholly, or even chiefly, upon the Norton patent.

In claim 2 the second series of gear-wheels is said to be "arranged step-like on the feed-shaft." The defendant's second series of gear-wheels is not arranged on the feed-shaft, but upon a counter-shaft connected therewith. This difference was held to be material and to defeat the charge of infringement, both by the learned judge of the Circuit Court in the case at bar, and by Judge Lacombe in Hendey

Machine Co. v. Prentiss Tool Co. (C. C.) 113 Fed. 592. In view of what has been said above, we do not find it necessary to consider this question.

What has been said concerning claim 2 applies, as the complainant admits, to all the other claims in suit except claim 6, in which patentable novelty seems to be rested upon a combination of a box cover and an index plate. Further discussion of that claim is unnecessary, and was not urged at the argument.

The decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal